Roger M. Townsend, WSBA #25525
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Tel: 206-652-8660
Email: rtownsend@bjtlegal.com

[Additional counsel identified on
signature page]

HONORABLE SALVADOR MENDOZA JR.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
SPOKANE DIVISION

| | |
|---|---|
| ALEX MCVICKER and MARK MOSS, individually and on behalf of all others similarly situated,<br><br>    Plaintiff(s),<br><br>    v.<br><br>GIGA WATT, INC.; GIGAGWATT PTE LTD.; CRYPTONOMOS PTE. LTD.; DAVE CARLSON; LEONID MARKIN; and EDWARD KHAPTAKHAEV,<br><br>    Defendants. | No. 2:18-cv-00103-SMJ (Consolidated with No. 2:18-cv-00100)<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>CLASS ACTION |
| RAYMOND BALESTRA, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>GIGA WATT, INC., ET AL,<br><br>    Defendants. | |

CONSOLIDATED CLASS ACTION
COMPLAINT - 1
(No. 2:18-cv-00103-SMJ)

Lead Plaintiff Alex McVicker ("McVicker" or "Lead Plaintiff"), along with additional plaintiff Mark Mass ("Moss") (collectively "Plaintiffs"), individually and on behalf of all other individuals and entities similarly situated, by their undersigned attorneys, allege in this Consolidated Class Action Complaint for violations of Sections 12 and 15 of the Securities Act of 1933 (the "Securities Act"), the following, based upon knowledge with respect to their own acts, and upon facts obtained through an investigation conducted by their counsel, which included, *inter alia*: documents and solicitation materials released by Defendants (defined below), in connection with the Giga Watt Project (defined below), and public statements made by Defendants concerning the Giga Watt ICO. Plaintiffs believe that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Many of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their control.

## I.   NATURE AND SUMMARY OF THE ACTION

1.     This is a class action on behalf of a class of investors consisting of all individuals and entities who transferred any fiat currency or cryptocurrency to Giga Watt, Inc., GigaWatt Pte. Ltd. (collectively, "Giga Watt") or Cryptonomos Pte. Ltd. ("Cryptonomos") in connection with the Giga Watt Project (defined

CONSOLIDATED CLASS ACTION
COMPLAINT - 2
(No. 2:18-cv-00103-SMJ)

below) between May 19, 2017, and October 2, 2018, and who suffered financial injury as a result thereof.

2. This action alleges violation of Sections 12(a)(1) and 15(a), 15 U.S.C. §§ 77l(a)(1), 77o(a), of the Securities Act against Giga Watt; Cryptonomos; Dave Carlson ("Carlson"); Leonid Markin ("Markin"); and Edward Khaptakhaev ("Khaptakhaev") and together with Marking and Carlson, the "Individual Defendants") (collectively, "Defendants").

3. Specifically, Defendants raised over $30 million in bitcoin ("BTC"), Ether ("ETH"), and fiat currencies as capital to develop a network of cryptocurrency mining facilities across the state of Washington (the "Giga Watt Project"). Defendants raised this capital by offering and selling unregistered investment contract securities in the form of Giga Watt Tokens ("WTT Tokens") from approximately May 19, 2017 through July 31, 2017 (the "Giga Watt ICO") and nonexistent, or non-functioning, cryptocurrency mining machinery and services (the "Miners") from approximately May 19, 2017 through October 2, 2018, in direct violation of the Securities Act.

4. The Giga Watt Project was marketed and sold on the Internet as a future purported full-service, turnkey processing center to house high-capacity cryptocurrency mining equipment in the state of Washington that would provide

CONSOLIDATED CLASS ACTION
COMPLAINT - 3
(No. 2:18-cv-00103-SMJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

1  miners a "full range of mining services from hosting, maintenance, and repair to

2  private blockchain servicing."

3       5.      Defendants described the "Giga Watt Project" as a partnership

4  between Giga Watt, Inc. and Giga Watt Pte. Ltd., pursuant to which Giga Watt,

5  Inc. would provide, *inter alia*, "turnkey mining services" and solutions, and Giga

6  Watt Pte. Ltd. would sell mining equipment used in Giga Watt's mining facilities.

7  These mining facilities are what Giga Watt calls "Giga Pods," which purportedly

8  "take[] advantage of the mining hardware's extremely high power density,

9  avoid[ing] active cooling consumption, and sav[ing] power for high-efficiency

10 mining, thus minimizing costs in every aspect of mining operations." The state of

11 Washington was chosen as the site of the Giga Watt Project because, *inter alia*, it

12 has one of the lowest electricity costs to consumers in the world.

13      6.      Defendants also solicited investors by claiming that, hand-in-hand

14 with hosting and maintaining mining equipment, Defendants would provide

15 interested investors − for a separate investment of cryptocurrency − "purchase and

16 delivery of mining equipment [and related power supplies] through [Giga Watt,

17 Pte Ltd.] with its subsequent setup and hosting at Giga Watt's facilities in

18 Wenatchee, WA."

19

20

CONSOLIDATED CLASS ACTION
COMPLAINT - 4
(No. 2:18-cv-00103-SMJ)

7.    Defendants made extensive efforts to solicit investors by stressing Giga Watt's purported cost-effective mining services and touting various income-generating uses for the WTT Tokens and the Miners that investors in the Giga Watt Project were expected to receive in exchange for their investments.

8.    For each investment of cryptocurrency or fiat currency in the Giga Watt Project, the investor would be given either: (a) WTT Tokens, or (b) a contract for Miners and related power supplies to be set up, deployed and maintained by the Giga Watt team at Giga Watt's facilities in Washington.

9.    Defendants marketed the WTT Token as an Ethereum-based cryptocurrency/digital currency which would purportedly provide the "right to use the Giga Watt processing center's capacity, rent-free for 50 years, to accommodate 1 Watt's worth of mining equipment power consumption." Additionally, Defendants claimed that the WTT Tokens would provide investors with the exclusive right to the "purchase and delivery of mining equipment through [GigaWatt Pte. Ltd.] with its subsequent setup and hosting at Giga Watt's facilities in Wenatchee, WA."

10.    In connection with the Giga Watt ICO and offer and sale of Miners, Defendants released a White Paper which described various aspects of Giga Watt's business model and purported benefits to purchasing WTT Tokens and/or

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Miners. For example, the Giga Watt White Paper claimed that WTT Tokens would derive their value from the functionality, usefulness, efficiency, and availability of the "Giga Watt Project".

11.     Essentially, participants in the Giga Watt ICO and purchasers of Miners were given nothing more for their investments than the future right to receive, on some anticipated date, a number of WTT Tokens or Miners that would then provide the opportunity to make a return on their investment by: (1) earning income from utilizing Giga Watt's Miners; (2) receiving discounts for using the Miners through their purchase of WTT Tokens; (3) trading WTT Tokens on cryptocurrency/digital currency exchanges for a profit; or (4) renting out WTT Tokens to other digital currency miners so as to receive rental income.

12.     Rather than immediately deliver the WTT Tokens or Miners the investors purchased, Defendants decided to issue WTT Tokens in stages coinciding with their release of Miners. That is, a specific batch of WTT Tokens was to be issued when, or if, Giga Watt was able to successfully develop new Giga Pods containing Miners. For example, the White Paper stated that the first batch of WTT Tokens, amounting to 5.4 million WTT Tokens, was issued on August 7, 2017, whereas new batches of tokens were to be issued "in step with the construction of new facilities."

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

13.    Giga Watt ICO investors have been left with little more than the right to receive WTT Tokens or Miners at some undefined point in time which would supposedly allow them access to Giga Watt's yet-to-be-fully-developed mining services. In truth, investors have been left with even less than this expectation given Defendants' October 1, 2018, announcement of "restructuring and policy changes" setting forth a "two-part plan to save the company in the short term" by ceasing construction of new facilities, laying off the majority of the Company's employees, and essentially abandoning the Giga Watt Project altogether.

14.    To further entice investors to invest in the Giga Watt Project, Defendants made various claims to the public that the value of Giga Watt Tokens was set to significantly increase and thus, they should invest sooner rather than later. For example, Giga Watt tweeted on June 13, 2017, "[j]ust 3 days left till token prices increase! The new price will be $1.05 per token. Make sure to purchase before Friday." Similarly, on June 15, 2017, Cryptonomos posted on the Bitcoin Forum: "Just 1 day until WTT token price goes up! The new price will be $1.05 per token. Make sure to purchase before 12:00PM Pacific on Friday, June 16." Thus, investors were led to believe that they would receive a profit simply by investing early.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

15.     By touting its "competitive services" and claiming that Giga Watt's "effective electricity cost" was, *inter alia*, "among the lowest feasible," Giga Watt was able to attract a significant amount of investors with promises that they would be part of a successful enterprise and "exclusive club" which would provide miners a "full range of mining services from hosting, maintenance, and repair to private blockchain servicing."

16.     From May 19, 2017 through June 2, 2017, Defendants ran the Giga Watt ICO "pre-sale," which had a minimum investment threshold of 10,000 Giga Watt Tokens, with each WTT Token costing between $1 and $1.2, depending on the date of acquisition. Within the first three days of the Giga Watt ICO, Giga Watt's first two batches of WTT Tokens, equivalent to approximately $6.3 million, purportedly sold out, with each WTT Token representing 1 megawatt ("MW") of future use. By June 28, 2016, Giga Watt had raised approximately $11.8 million, more than 30% of its $30 million goal, with over a month left to go in the Giga Watt ICO.

17.     Defendants made sure to construct the ICO to align their financial interests alongside the interests of WTT Token purchasers. Specifically, Giga Watt insiders were to receive 10 WTT Tokens, and partners and advisors were to receive 5 WTT Tokens, for every 100 WTT Tokens sold in the Giga Watt ICO.

CONSOLIDATED CLASS ACTION
COMPLAINT - 8
(No. 2:18-cv-00103-SMJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

While Defendants have represented that the WTT Tokens to be dealt out to company insiders would be disbursed only when there are no token holders that have not received their WTT Tokens due to Giga Pods and Miners having not been completed yet, Plaintiffs are uncertain as to whether Defendants have indeed honored such commitment. Moreover, as to the WTT Tokens to be distributed to partners and advisors, the White Paper stated that such distribution would be "on a case by case basis." Thus, Defendants made sure to reserve the right to pay out WTT Tokens to their affiliates despite the fact that numerous investors have been left waiting for the issuance of their WTT Tokens by Giga Watt.

18.     Defendants offer and sale of WTT Tokens and Miners was a clear offer and sale of securities because, *inter alia*, Plaintiffs, and other similarly situated investors: (i) invested money; (ii) into a common enterprise (the Giga Watt Project); and (iii) with the expectation of receiving Miners and/or or WTT Tokens which would purportedly provide investors access to a functional and successful Miners, thereby allowing them to mine various cryptocurrencies for a profit and their WTT Tokens to increase in value and produce substantial returns. Additionally, the failure or success of the Giga Watt Project was entirely dependent on Defendants' managerial efforts.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

19.     Furthermore, Defendants have even referred to token purchasers as "investors." For example, during an interview with *Bitcoin Magazine*, when asked, "[a]re you still planning an ICO for Giga Watt? If so, will this be a registered security," Carlson replied, "[w]e've been working very hard to come up with a product or service that gives **anyone — not just accredited investors —** access to our blockchain processing facility infrastructure." (emphasis added).

20.     Although Defendants stated that their goal was "to offer the token holders access to both an exciting new world of technology and the cryptocurrency mining business" which included "access to Giga Watt's facility at unprecedentedly low hosting rate[s]," most investors have not received the promised Miners they purchased let alone the WTT Tokens in the timeframe represented in the White Paper and Giga Watt's solicitation materials. Moreover, the Miners that have been delivered utterly fail to perform as advertised and have not provided investors with the expected profit from mining cryptocurrencies.

21.     Given the fact that Defendants have been unsuccessful in creating the Miners, or "Giga Pods," they promised, the WTT Tokens that Plaintiffs and the Class purchased in the ICO have not represented the value or income-generating properties that investors believed they were purchasing.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

22.     The Securities Act's registration requirements are designed to protect investors by ensuring they are provided adequate information upon which to base their investment decisions. Absent registration, issuers of securities are able to tout their investment opportunities with no supervision or regulation whatsoever. For example, an issuer could omit any information that would make a potential investor think twice before investing (*e.g.*, conflicts of interest or major setbacks to core product lines) or peddle its securities using unbounded exaggerations regarding the progress of its products, business plan, business strategies, or even fabricate the existence of relationships with vendors or other business partners.

23.     Due to the varied and innumerable ways in which investors can be, and are likely to be, manipulated and harmed absent any of the protections under the federal securities laws, Sections 5 and 12(a)(1) of the Securities Act provide for strict liability against any person who offers or sells an unregistered security. As detailed herein, the offer and sale of WTT Tokens and Miners was, and has been at all times, an offer and sale of unregistered securities and thus, Defendants are strictly liable under Section 12(a)(1) of the Securities Act.

24.     Importantly, proof of Defendants' calculated deprivation of investors' rights and protections under the federal securities laws is not required or determinative as to Plaintiffs' claim. This is because Defendants are liable simply

CONSOLIDATED CLASS ACTION
COMPLAINT - 11
(No. 2:18-cv-00103-SMJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

by virtue of having offered and sold unregistered securities to Plaintiffs and the proposed class. Nevertheless, Defendants' clear intentional attempt to circumvent registration requirements under the Securities Act are outlined herein to stress the urgency and need for immediate judicial intervention to preserve Plaintiffs' and other investors' significant financial interests which Defendants currently control, and to rectify existing and future irreparable harm to Plaintiffs and Giga Watt Project investors. For these reasons, Plaintiffs, on behalf of themselves and all similarly situated Giga Watt Project investors, seek compensatory, injunctive, and rescissory relief, which would provide rescission and repayment of all investments into the Giga Watt Project, as well as secure and conserve such funds until repayment.

## II.    JURISDICTION AND VENUE

25.    This Court has subject matter jurisdiction under 28 U.S.C. § 1367 (supplemental jurisdiction), 28 U.S.C. § 1331 (federal question jurisdiction) and Section 22 of the Securities Act (15 U.S.C. § 77v) because Plaintiffs allege violations of Sections 12(a)(1) and 15(a) of the Securities Act.

26.    This Court has personal jurisdiction over each of the Defendants because each has sufficient minimum contacts with this District as to render the

CONSOLIDATED CLASS ACTION
COMPLAINT - 12
(No. 2:18-cv-00103-SMJ)

1   exercise of jurisdiction by this Court permissible under traditional notions of fair

2   play and substantial justice.

3         27.    Venue is proper in this District under Section 22 of the Securities

4   Act, 15 U.S.C. § 77v, as well as under 28 U.S.C. § 1391, because: (a) the conduct

5   at issue took place and had an effect in this District; (b) a substantial portion of the

6   transactions and wrongs complained of herein occurred here; and (c) Defendants

7   have received substantial compensation and other transfers of money here by

8   doing business here and engaging in activities having an effect in this District.

9                     **III.    PARTIES**

10   **A.    Plaintiffs**

11         ***1.    Lead Plaintiff – McVicker***

12         28.    On June 28, 2018, this Court appointed McVicker to serve as Lead

13   Plaintiff for the class in this class action pursuant to the Private Securities

14   Litigation Reform Act of 1995.

15         29.    McVicker is an individual domiciled in Windsor, California and is

16   sui juris. Lead Plaintiff expended 5.05 Ethereum ("ETH") in the Giga Watt ICO to

17   purchase 1,876 WTT Tokens and invested an additional 2.3207119 BTC and

18   268.1 Litecoin ("LTC") in the Giga Watt Project to purchase 10 Miners – more

19   specifically, 10 Antminer D3 Dash miners – from Defendants, and has suffered

20

CONSOLIDATED CLASS ACTION
COMPLAINT - 13
(No. 2:18-cv-00103-SMJ)

financial harm as a result of Defendants' alleged offer and sale of unregistered securities detailed herein.

30.     To make his investments, Plaintiff McVicker placed his purchases through the Cryptonomos platform -- a Singapore-based online platform through which all payments for WTT tokens were collected and through which all WTT tokens were to be issued and distributed by Defendants to Giga Watt investors -- from Plaintiff McVicker's home in California and followed the instructions provided.

### 2.     *Plaintiff Moss*

31.     Plaintiff Moss is an individual domiciled in San Clemente, California and is *sui juris*. Between June 2, 2017 and August 21, 2017, Plaintiff Moss transmitted to Defendants 9.785386 bitcoin, 322.605305 Ether, 4,056.28 Litecoin, and $241,890.00 (USD) in fiat currency as his investments in Giga Watt, broken down thusly: (a) 3.513386 bitcoin and 322.605305 ether invested for the disbursement of 60,282 WTT tokens, and (b) 6.272 bitcoin, 4,056.28 Litecoin, and $241,890.00 (USD) for 129 Antminer D3 machines, 60 L3+ machines, related power supplies, and deployment/setup fees.

32.     To make his investments, Plaintiff Moss placed his purchases through the Cryptonomous platform – a Singapore-based online platform through

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

which all payments for WTT tokens were collected and through which all WTT tokens were to be issued and distributed by Defendants to Giga Watt investors – from Plaintiff Moss's home in California and followed the instructions provided.

33.     Although Plaintiff Moss was supposed to receive his Batches 3 and 4 WTT by September 2017 and was supposed to have his 129 Antminer D3 and 60 L3+ machines up-and-running at the Giga Watt Project in the same general timeframe if not soon thereafter, no such issuance took place by those dates.

34.     Plaintiff Moss presented to Defendants several written demands that Plaintiff Moss's investments in Giga Watt be addressed and/or rescinded by Giga Watt – a demand that Plaintiff Moss repeated on numerous occasions, including a March 1, 2018 demand written on Plaintiff Moss's behalf by undersigned counsel.

35.     As of the date of this filing, Defendants have failed to provide a meaningful response to Plaintiff Moss's demand and instead seem intent on merely stalling for time despite having violated the terms of their own White Paper and having refused to adhere to their own terms for an investor remedy.

36.     Plaintiff Moss has suffered financial harm as a result of Defendants' alleged offer and sale of unregistered securities detailed herein.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

**B.** **Defendants**

   *1.* *The Corporate Defendants*

   37.    Defendant Giga Watt, Inc. is a Washington corporation that was incorporated on December 15, 2016 and has its principle place of business on 1 Campbell Pkwy, East Wenatchee, Washington 98802. Recent events have revealed that the company is saddled with debt and seems to be nearing insolvency.

   38.    Defendant GigaWatt Pte. Ltd. is a privately held, foreign for-profit corporation that was incorporated on March 29, 2017, and which maintains its headquarters at 1 Coleman Street #08-07, Adelphi, Singapore. GigaWatt Pte. Ltd. sells mining equipment to customers worldwide. Such mining equipment was installed and hosted at Giga Watt, Inc.'s mining facilities. Upon information and belief, GigaWatt Pte. Ltd. is a subsidiary of Giga Watt, Inc.

   39.    Defendant Cryptonomos Pte. Ltd. is a foreign, for-profit corporation that was incorporated on September 20, 2016, and which maintains its headquarters at 1 Coleman Street #08-07, Adelphi, Singapore. Cryptonomos operates as a crowd funding platform for entities that wish to conduct initial coin offerings. Cryptonomos participated in the sale of WTT Tokens in connection

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

with the Giga Watt ICO by soliciting investors. Moreover, purchases of WTT Tokens were made by investors through the Cryptonomos' Website.

40.     Upon information and belief, Cryptonomos is an affiliate of Giga Watt, Inc., as Cryptonomos maintains the same business address and suite number as Giga Watt Pte. Ltd.

### 2.     *The Individual Defendants*

41.     Defendant Carlson is one of the founders of Giga Watt. Carlson served as the Company's Chief Executive Officer ("CEO") until August 2018. Upon information and belief, Carlson controlled Defendant Giga Watt, Inc. and Defendant GigaWatt Pte. Ltd. at all relevant times. Carlson actively promoted the sale of WTT Tokens in the Giga Watt ICO through interviews and presentations to the public and acted as the head of the Giga Watt Project in connection with the Giga Watt ICO.

42.     Defendant Markin is believed to be domiciled in California. Markin is one of the founders of Giga Watt and Cryptonomos. Markin's official title with both entities is "Financial management" which presumably is the equivalent of Chief Financial Officer ("CFO"). Prior to his present role as a self-proclaimed "blockchain investor," Markin was a professional poker player. Through his ownership in, and control over, Giga Watt and Cryptonomos, Markin orchestrated

CONSOLIDATED CLASS ACTION
COMPLAINT - 17
(No. 2:18-cv-00103-SMJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Giga Watt's unlawful offer and sale of unregistered investment contract securities in the form of WTT Tokens and the Miners.

43.     Defendant Khaptakhaev is one of the founders of Giga Watt and Cryptonomos. Khaptakhaev serves as Legal Counsel for Cryptonomos and "VP of Sales" for Giga Watt. Through his ownership in, and control over, Giga Watt and Cryptonomos, Khaptakhaev orchestrated Giga Watt's unlawful offer and sale of unregistered investment contract securities in the form of WTT Tokens and the Miners.

### 3.     Other Liable Persons/Entities

44.     In addition to those persons and entities set forth as Defendants herein, there are likely other parties who may well be liable to Plaintiffs, but for whom Plaintiffs currently lack specific facts to name such person or persons as a party defendant. By not naming such persons or entities at this time, Plaintiffs are not waiving their right to amend this pleading to add such parties, should facts develop to warrant adding such parties in the future.

## IV.    CLASS ACTION ALLEGATIONS

45.     Plaintiffs bring this action individually and on behalf of all individuals and entities who invested in the Giga Watt Project by transferring any fiat currency or digital currency to Giga Watt or Cryptonomos to purchase WTT

CONSOLIDATED CLASS ACTION
COMPLAINT - 18
(No. 2:18-cv-00103-SMJ)

Tokens or Miners between May 19, 2017 and October 2, 2018 and who suffered financial injury as a result thereof (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant.

46.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

47.     While the exact number of Class members is presently unknown to Plaintiffs and can only be ascertained through discovery, Plaintiffs believe that there are thousands of members in this Class. All members of the Class may be identified by records maintained by Defendants and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

48.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following: (i) whether Defendants offered and sold unregistered securities in violation of the federal securities laws; (ii) whether Plaintiffs and other Class members will suffer irreparable harm if such securities laws violations are not remedied; and (iii) whether the Class is

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  entitled to compensatory, injunctive, and/or rescissory relief as a result of

2  Defendants' wrongful conduct as alleged herein.

3       49.     Plaintiffs' claims are typical of the claims of the other members of

4  the Class, and Plaintiffs do not have any interests adverse to the Class.

5  Additionally, Plaintiffs and the other members of the Class have all sustained

6  harm in a substantially identical manner as a result of Defendants' wrongful

7  conduct as alleged herein.

8       50.     Plaintiffs will fairly and adequately protect the interests of the Class

9  and have retained competent counsel experienced in litigation of this nature.

10      51.     The prosecution of separate actions by individual members of the

11  Class would create a risk of inconsistent or varying adjudications with respect to

12  individual members of the Class, which could establish incompatible standards of

13  conduct for Defendants.

14      52.     Plaintiffs anticipate that there will be no difficulty in the management

15  of this litigation. A class action is superior to other available methods for the fair

16  and efficient adjudication of this controversy.

17      53.     Defendants have acted on grounds generally applicable to the Class

18  with respect to the matters complained of herein, thereby making appropriate the

19  relief sought herein with respect to the Class as a whole.

20

CONSOLIDATED CLASS ACTION
COMPLAINT - 20
(No. 2:18-cv-00103-SMJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

54. Accordingly, Plaintiffs seek compensatory, rescissory, injunctive, and other equitable relief on behalf of themselves and the Class to prevent the irreparable injury they will continue to suffer absent judicial intervention

## V. SUBSTANTIVE ALLEGATIONS

### A. Background on Cryptocurrencies and Blockchains

55. Bitcoin is a type of "cryptocurrency" – also commonly referred to as "digital currency" or "virtual currency." The Financial Action Task Force, an inter-governmental agency that promotes laws combating anti-money laundering, and in which the United States is a member, describes cryptocurrency as a "digital representation of value that can be digitally traded and functions as (1) a medium of exchange; and/or (2) a unit of account; and/or (3) a store of value, but does not have legal tender status . . . in any jurisdiction." Importantly, cryptocurrencies do not have legal tender status like fiat currencies (*e.g.*, U.S. dollar and the Euro). The most widely used cryptocurrencies are BTC and ETH.

56. A "blockchain" is essentially a digitized, decentralized, public ledger that cryptographically records, preserves and presents information. The general idea is that each "block" contains information, such as details on transactions that are made. After a "block" is created (with cryptography so as to verify its contents), the information inside of it cannot be changed. The "block" then

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

becomes part of the "blockchain" and an encrypted version of the information contained therein becomes publicly available along with all the previous "blocks" in the chain. After this process is complete, then another block is created with additional information and so on and so forth.

57.    To date, most "blockchains" are used to record transactions involving digital currencies (*e.g.*, BTC and ETH). However, a "blockchain" could be used to record all types of information. For example, a blockchain could be used for deed recordation/transfers or even transfers of stock certificates.

**B.    Background on Coin Mining**

58.    Coin mining is a process by which transactions are verified and added to certain public ledgers known as "blockchains," and also one method through which certain new digital currencies are released.

59.    Anyone with access to the internet and requisite hardware can participate in mining. The mining process involves compiling blocks and trying to solve a computationally difficult puzzle. Typically, the miner who first solves the puzzle gets to place the next block on the blockchain and claim a reward. The rewards, which incentivize mining, are typically both the transaction fees associated with the transactions compiled in the block as well as newly released digital currency that the participant has chosen to mine.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

60.     With most digital currencies a miner chooses to mine, there is a finite amount of that particular digital currency that can ever exist. Despite this, coin miners are capable of reaping significant profit depending on the hardware and equipment they use to mine such digital currencies. This is because better hardware and equipment increases the likelihood that a miner will be the first to solve the computationally difficult puzzle and obtain the reward.

61.     Additionally, because operating high-end hardware and equipment for long periods of time requires the expenditure of a significant amount of electricity, its profitability is largely dependent on the cost of electricity where the mining operation is located.

## C.     The Giga Watt Project

62.     In 2012, Carlson founded MegaBigPower, which was a megawatt-scale BTC mining center and purportedly "one of the largest single-operator mines in the world." In approximately March 2017, Carlson rebranded MegaBigPower as Giga Watt, a blockchain hosting and servicing center for mining hardware. At the time Carlson rebranded MegaBigPower to Giga Watt, Giga Watt had completed the construction of three (3) mining facilities originally designed by MegaBigPower, consisting of 1 MW, 1 MW, and 0.25 MW. In October 2018,

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Giga Watt announced that it had abandoned further construction of additional mining facilities.

63.     According to the White Paper, the Giga Watt Project is a "partnership" between Giga Watt, Inc. and GigaWatt Pte. Ltd., pursuant to which Giga Watt, Inc. provides, *inter alia*, mining facilities and "turnkey mining services," and GigaWatt Pte. Ltd sells the mining equipment used in Giga Watt's mining facilities. The "standard turnkey solution" Giga Watt, Inc. would provide was described as:

> [P]urchase and delivery of mining equipment through its Partner with its subsequent setup and hosting at Giga Watt's facilities in Wenatchee, WA, with hosting fees starting as low as 7.5 USD cents/kW/hour, zero setup fees (for equipment purchased through its Partner) and uniquely low minimum facility entrance threshold of 1 miner of any model.

64.     Despite Defendants' representations that GigaWatt Pte. Ltd. is a mere "partner" of Giga Watt, Inc., upon information and belief, Carlson, Markin and Khaptakhaev own and operate GigaWatt Pte. Ltd. as a subsidiary of Giga Watt, Inc.

65.     Giga Watt's pricing structure for its standard turnkey solution consists of a one-time charge for the purchase of mining equipment and daily deductions for hosting services. These payments include electricity costs, a

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

maintenance fee, and a facility rent fee. Anyone who chooses to use their own mining equipment instead of the mining equipment Giga Watt offers gets charged the same hosting fees but is also charged an additional setup fee.

66. The purported technology that Giga Watt uses to provide its standard turnkey solution is what it calls "Giga Pod solution." Giga Watt claimed that these Miners, or "Giga Pods," were, *inter alia*, highly efficient, minimized costs "in every aspect of mining operations," provided flexibility for "record-fast expansion of [their] capacity," and "minimize[d] construction costs."

67. Defendants boasted about Giga Watt's mining technology and how purportedly efficient its Miners, housed in "Giga Pods," were in an effort to collect as much money from investors as it could, with the promise that these investors would receive functioning and profitable Miners, WTT Tokens that would increase in value alongside the success of the Giga Watt Project, and/or that investors would be issued such tokens upon the development and completion of the Giga Pods/Miners. However, Defendants have abandoned the Giga Watt Project leaving the thousands of investors with worthless WTT Tokens, non-functioning or unprofitable Miners, and in many cases, nothing whatsoever.

68. Defendants have consistently failed to meet their obligations to investors and self-imposed deadlines for development of the Giga Watt Project.

CONSOLIDATED CLASS ACTION
COMPLAINT - 25
(No. 2:18-cv-00103-SMJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

For example, Giga Watt issued a press release on December 14, 2017 stating that some Batch 4 WTT Tokens would "fall outside the time frame of our original target maximum delivery date according to the whitepaper."

69.    Additionally, Giga Watt explicitly stated that "after 10pm UTC on July 24th, 2017" purchasers of WTT Tokens would be "entitled to a refund of" WTT Tokens purchased "in the original form of payment." Whether such refunds were actually honored is not entirely clear. However, the fact that Defendants failed to fully accomplish the goals outlined in the White Paper and have generally been unsuccessful in managing the Giga Watt Project negatively affects all WTT Token holders, not only investors who have yet to receive their WTT Tokens.

70.    Despite Defendants' repeated failure to meet their obligations, Giga Watt continued soliciting the general public to invest in yet-to-be created Miners that would, purportedly, be delivered on a fixed schedule. Evidently, Defendants were more concerned with raising capital than actually developing and maintaining the Giga Watt Project.

71.    In short, given that Giga Watt's business plan has failed, contrary to what Defendants led every investor in the Giga Watt Project to believe, the WTT Tokens and Miners purchased are worthless (or in many cases, nonexistent).

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

72.     Giga Watt conveyed the release of each batch of WTT Tokens in its White Paper under the "Projected Construction Timeline," which stated:

   3 units, 2.25 MW are available right now

   [Batch 1]

   - July 15, 2017: 1 Giga Pod completed, 0.75 MW

   [Batch 2]

   - August 1, 2017: 2 Giga Pods completed, 2.4MW

   - August 15, 2017: Expansion of the unit, 0.9 MW

   [Batch 3]

   - September 1, 2017: 3 Giga Pods completed, 4.5 MW

   [Batch 4]

   - September 15, 2017: 9 Giga Pods completed, 15 MW

   [Batch 5]

   - October 1, 2017: 3 Giga Pods completed, 4.5 MW

   [Batch 6]

   - November 15, 2017: 3 Giga Pods completed, 4.2 MW

73.     The "3 units, 2.25 MW" referred to as "available right now" were the three (3) mining facilities originally designed by MegaBigPower, consisting of 1 MW, 1 MW, and 0.25 MW. As indicated above, these mining facilities were developed and functional prior to the Giga Watt ICO. In addition to the Giga Pods constructed at the Moses Lake Site and Pangborn, these three facilities are the

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1  only Giga Pods that were fully developed and functional for investors to utilize.

2  Thus, despite representing to investors that these Giga Pods would be built in the

3  specified date listed, Plaintiffs, and other similarly situated investors, have been

4  left with WTT Tokens and Miners that have little to no functional uses, minimal

5  monetary value, and for some investors, the mere future right to receive WTT

6  Tokens or Miners, which may never materialize.

7  **D.  The Giga Watt ICO**

8  74.  The Giga Watt ICO "Token Launch" consisted of a public offering of

9  30 million WTT Tokens for $1 to $1.20 per WTT Token. The Giga Watt ICO ran

10  between June 2, 2017 and July 31, 2017. The Giga Watt ICO had a minimum

11  investment threshold of 1 WTT which was equivalent to $1 to $1.20. In May

12  2017, Defendants released the White Paper which essentially highlighted the

13  purpose and goals of the Giga Watt Project and the terms of the Giga Watt ICO.

14  According to the White Paper, Giga Watt conducted a pre-sale between May 19,

15  2017 and June 2, 2017, during which time investors were able to purchase WTT

16  Tokens with a minimum entry threshold of 10,000 WTT Tokens, which is

17  equivalent to $10,000. Investors acquired WTT Tokens using cryptocurrencies

18  (such as BTC and ETH) and fiat currencies (such as EUR and USD) via the ICO

19  Website hosted by Cryptonomos. Upon information and belief, Cryptonomos is an

20

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

affiliate of Giga Watt, as Andrey Kuzenny, the Chief Coordinator of Giga Watt, is also the co-founder of Cryptonomos. Moreover, Cryptonomos maintains the same business address and suite number as Giga Watt Pte. Ltd.

75.     The White Paper described a WTT Token as "an Ethereum token representing the right to use the Giga Watt processing center's capacity, rent-free for 50 years, to accommodate 1 Watt's worth of mining equipment power consumption." Thus, investors who wanted to use their mining equipment in Giga Watt's mining facilities were encouraged to purchase the number of WTT Tokens equal to their equipment's power consumption. Investors expected to receive a return on their investment in WTT Tokens or Miners in the following ways: (1) utilizing Miners to efficiently mine various cryptocurrencies; (2) utilizing the WTT Tokens to mine coins using Giga Watt's Giga Pods; (3) renting out their WTT Tokens to other miners; and (4) or selling WTT Tokens on an online exchange that allows the trading of WTT Tokens. With respect to the ability to profit from investing in the Giga Watt Project, Cryptonomos responded as follows to a post made by a wary potential investor who feared the inability to "get out" of his investment:

> You can sell WTT tokens as soon as they go on
> exchanges - we will announce exchange list later. Also,
> you are able to use tokens for your own miners to save on
> hosting, as well as rent out tokens to other miners to get
> rental income. So there are a few way to make use of

CONSOLIDATED CLASS ACTION
COMPLAINT - 29
(No. 2:18-cv-00103-SMJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

WTT tokens, and by no means you are tied up to anything[.]

76.    Additionally, the right to buy and host Giga Watt's mining equipment was purportedly exclusive to holders of WTT Tokens. In this regard, Giga Watt further enticed investors to purchase WTT Tokens when it announced in or about June 2017:

> We are writing to you to announce an important and exciting change. Due to overwhelming demand for Giga Watt's equipment hosting services the Giga Watt project is discontinuing, for an indefinite period of time, the option of buying and hosting mining equipment for clients who do not own WTT tokens.
>
> From now on, the orders to buy and host mining equipment are accepted only from the clients who, at the time of their equipment or hosting service order, already own WTT tokens, and the number of their WTT tokens is ample to cover the energy consumption of all the equipment or hosting service they are ordering.

77.    Despite the foregoing, Defendants quickly abandoned this requirement in favor of raising additional investments from any individual or entity – regardless of the number of WTT Tokens they held.

78.    Within the first three days of the Giga Watt ICO, Giga Watt's first two batches of WTT Tokens, equivalent to approximately $6.3 million, and by the end of June 2017, Giga Watt had raised approximately $11.8 million which was equivalent to more than 30% of its $30 million goal. By the end of the Giga Watt

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

ICO, Giga Watt had raised approximately $22.3 million and transferred the funds received by investors into an escrow account held by international law firm Perkins Coie LLP.

79.     Giga Watt represented to investors that the WTT Tokens investors purchased would be released from escrow and issued to the investors upon the completion of the requisite Giga Pod facilities (and thus, Miners).

80.     The one-sided terms imposed upon Plaintiffs and other investors in the Giga Watt ICO White Paper are both unconscionable and illusory. The Giga Watt White Paper purports to require agreement from the investors that, despite the investors' investments, Giga Watt might not allocate to the investors any WTT or mining equipment at all. Moreover, given Giga Watt's dire financial situation, Giga Watt seems unlikely to ever rescind or refund any investor's cryptocurrency investment – all while retaining the proposed class' invested funds and assets and while having released to themselves (*i.e.*, the Giga Watt insiders) additional WTT tokens merely for having procured the sale of undelivered investor tokens and machinery.

81.     The onerous manner in which Giga Watt imposed upon investors its terms render the terms unfair, unconscionable, oppressive, and a contract of adhesion.

CONSOLIDATED CLASS ACTION
COMPLAINT - 31
(No. 2:18-cv-00103-SMJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

## E.    The Giga Watt Project's Failure

82.    In early August 2018, two contractors filed liens against Giga Watt seeking approximately $600,000 from the Company for services rendered in creating Giga Pods. During this same period, Giga Watt laid off 57 of its 70 employees.

83.    On August 15, 2018, Defendant Carlson "quietly resigned" from his position as CEO. In discussing Giga Watt's financial situation at the time, Carlson was quoted as stating the Company was in "a temporary situation caused by a cash crunch" and that he believed the project still needed around "$3 million to begin operation." (Emphasis added.)

84.    Many of these facts were not publicly revealed until *The Wenatchee World*'s September 26, 2018 article entitled: "Giga Watt hits 'bump in the road' | Carlson steps down, staff trimmed to 13 from 70." The article addressed the fact that Giga Watt's financial situation was dire. For example, Giga Watt had been in default on certain obligations and late on lease payments on four different lots for the first time in August and September 2018.

85.    In discussing Giga Watt's financial situation, the Company's interim CEO acknowledged the unsustainability of the Giga Watt Project's business model by stating:

CONSOLIDATED CLASS ACTION
COMPLAINT - 32
(No. 2:18-cv-00103-SMJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

"We had a business model in place which had not accounted for the unpredictability of human nature in the face of a volatile cryptocurrency market," he said. "We are changing that business model to one which will be sustainable for us, while still taking care of our obligations to our clients and shareholders."

86.     On October 1, 2018, Giga Watt published a "letter" from its interim CEO to investors in the Giga Watt Project which essentially conveyed Defendants' abandonment of the Giga Watt Project altogether. This letter read, in relevant part:

**Giga Watt Restructuring and Policy Changes**

To: Giga Watt Clients and Watt Token Holders

I'm certain you have all read or heard the news about leadership changes, layoffs, and the general shakeup here at Giga Watt . . ..

I believe that we can still make this company work for all of us; owners, clients and employees alike. That is why I am still here, and why our remaining team is working long hours to drive things forward. We believe that Giga Watt can succeed. We believe that it can be saved and that we are the team to do it.

We have a two-part plan to save the company in the immediate and short-term, and then to transition to a more sustainable and mutually profitable business model in the longer term. The immediate plan involves drastic cuts in corporate spending (you saw the first step in the form of layoffs last week), as well as steps to increase revenues to meet our financial obligations.

Among the immediate steps toward both ends are:

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104 Tel: 206-652-8660

- Renegotiate all corporate rentals and purchasing plans, to include office spaces and any other non-GW sites/equipment, or drop them altogether

- Move our remaining people into smaller facilities, which will save money and help reduce communication times among varying functions

- Temporarily raise rates for WTT holders to 6 cents per kW hour

- Use non-GW facilities that we have access to in order to run miners for GW, as a source of direct revenue

The temporary increase in WTT fees will likely be the point of greatest concern for you, and it was for us as well. In the spirit of transparency that I mentioned earlier, we believe it is unavoidable if we wish to continue operating as a company. The choice before us and you are either to make sacrifices and difficult choices now and thereby preserve the company, or continue operations as they had been before, and follow that unsustainable path to failure.

*** 

**Note:**

**Please be advised that specific policies will be published this week relative to WTT, rate changes, negative accounts, disconnected miners, equipment maintenance and shipping.**

87.     To summarize, Giga Watt suspended further construction of the Giga Pods and raised rates for WTT Token holders – stripping away what little value WTT Tokens had entirely -- essentially abandoning the Giga Watt Project

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

altogether. Thus, as of the date of this filing, numerous investors have yet to receive their WTT Tokens and/or Miners and are likely never to receive either.

88. More recently, on October 18, 2018, Defendant Giga Watt announced one of its new business models in the following post on its official Facebook page:

> Dear all, we at Giga Watt are pleased to announce the start of our Private Pod sales to individuals. A stand-alone real estate unit, one Giga Pod can host up to 1.5 Mwt worth of miners. Located in the state of Washington, up in the Wenatchee National Forest mountains, Giga Watt's facilities enjoy some of the least expensive electric power tariffs in the continental United States. A Giga Pod is a perfect hosting solution for larger mining customers looking for their own mining-centric data centers. If you want a separate Giga Pod all for yourself, we would love to hear from you at ak@giga-watt.com

89. Evidently, the new strategy appears to be an attempt to sell the few mining facilities Giga Watt actually created as a way to recoup funds which would then, presumably, be used to pay the approximately $5 million in debt with which Giga Watt is reportedly saddled.

90. The Giga Watt Project's failure was foreshadowed by continuous delays to the Giga Watt Project. For example, Giga Watt issued a press release on December 14, 2017, which stated:

> Despite our best efforts, the delivery of the final portion of the Batch 4 WTT will fall outside the time frame of

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

our original targeted maximum delivery date according to the whitepaper.

Batch 4 tokens that were purchased before 10pm UTC on July 24th, 2017, will be issued on 25th December, 2017.

Any WTT that were purchased after 10pm UTC on July 24th, 2017, are expected to be delayed. It is estimated that the power for these tokens will be ready by the end of February, at which time we should be able to issue your WTT. If your tokens were bought after 10pm UTC on July 24th, 2017, you are entitled to a refund of your WTT tokens in the original form of payment, and will receive the USD amount that was paid when the tokens were bought.

As gratitude for your continued patience, we'd like to offer token holders who purchased their tokens after 10pm UTC on July 24th, 2017, a bonus of 10% additional tokens.

We are making good progress, but it hasn't been easy!

If you plan to hold, we will issue your 10% bonus tokens automatically.

If you plan to hold, we will issue your 10% bonus tokens automatically. Please email all refund related inquiries to: refund@cryptonomos.com

91.     Despite massive delays in the construction of Giga Pods resulting in numerous investors not receiving their WTT Tokens, Defendants already reserved and/or issued 15 WTT Tokens to themselves and their affiliates for every 100 WTT Tokens sold in the Giga Watt ICO. This means that if $22.3 million was raised by the Giga Watt ICO, and WTT Tokens were purportedly sold for

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

approximately $1.00 each, Giga Watt members and affiliates have reserved/issued themselves approximately $3.4 million worth of WTT Tokens.

92.     Not only had Defendants failed to meet the timeline it represented, but even when they finally delivered Miners and Giga Pods, the quality of such Miners has been found lacking. Investors have made numerous public statements that Giga Watt's Miners have repeatedly broken down or did not perform as advertised. Given the facts that investors purchased Miners to attain profit mining cryptocurrency and the value and use of WTT Tokens is tied to Defendants' ability to create and manage the Giga Watt Project, all investors in the Giga Watt Project have been negatively affected by such failures.

**F.     WTT Tokens and Miners Constitute "Investment Contracts"**

93.     Defendants raised capital to develop the Giga Watt Project by participating in the offer and sale of WTT Tokens and the Miners. Similarly, the value of Miners has at all times been dependent on whether Defendants could create and maintain the Miners and thus launch the Giga Watt Project. Likewise, the value of WTT has at all times been dependent of whether Defendants could successfully create and manage the Giga Watt Project.

94.     The Giga Watt Project has at all relevant times been developed, operated, and maintained by the Defendants. Given that the offer and sale of WTT

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Tokens and Miners was conducted by Giga Watt through a website run by Cryptonomos (a likely affiliate of Giga Watt), it is indisputable that Cryptonomos was instrumental in orchestrating and operating the Giga Watt ICO. Similarly, Carlson, as the CEO and founder of Giga Watt; and Markin and Khaptakhaev as founders of Giga Watt and Cryptonomos, clearly controlled and orchestrated Giga Watt's actions in offering and selling WTT Tokens and the Miners.

95. Under the federal securities laws, the definition of a security includes an "investment contract." Plaintiffs' and the Class' investments of cryptocurrencies (such as BTC and ETH) and fiat currencies constitute an investment of money in an "investment contract."

96. When determining whether a security has been offered and sold, the focus must be on the economic realities underlying the transaction. Here, the economic realities are that Plaintiffs and the Class invested their digital currencies and fiat currency in order to receive Miners that would be serviced and maintained by Giga Watt and used to profit from mining various cryptocurrencies and/or WTT Tokens, which Plaintiffs and the Class reasonably expected would generate a profit in multiple ways. More specifically, the Miners and/or WTT Tokens were expected to provide value by way of using them to mine cryptocurrencies/digital currencies, trading then WTT Tokens for profit, or lending the tokens to others to

CONSOLIDATED CLASS ACTION
COMPLAINT - 38
(No. 2:18-cv-00103-SMJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

mine cryptocurrencies/digital currencies. Such economic value to be received by Plaintiffs and the Class has at all times been entirely dependent on the Defendants' technical and managerial efforts to fully develop and launch the Giga Watt Project.

97.     Further, Plaintiffs and the Class invested in the common enterprise that is the Giga Watt Project. That is, investments in Miners and WTT Tokens were pooled under the control of the Defendants, and the success of the Giga Watt Project—and thus the potential profits stemming from the efficiency and effectiveness of Giga Watt's Miners, which was expected to ultimately effect the value and utilization of WTT Tokens—was entirely reliant on Defendants' actions.

98.     Accordingly, any success from creating the Miners and the WTT Token and future potential profit from operating the miners or increases to the WTT Token's value were entirely dependent on Defendants' actions.

99.     Furthermore, Defendants were fully aware that they were selling unregistered securities and depriving public investors of their rights and protections under the federal securities laws. Indeed, as Carlson stated during an interview, Defendants had "been working very hard to come up with a product or

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

service that gives **anyone — not just accredited investors** — access to our

blockchain processing facility infrastructure." (Emphasis added.)

100.   Astoundingly, despite the fact that Defendants deprived Plaintiffs and

the Class of their rights and protections under the federal securities laws, they

even attempted to protect themselves using the safe-harbor protections for

registered issuers providing "forward-looking statements" under these same laws.

For example, the Giga Watt White Paper included a "Legal Disclaimer" which

stated "[c]ertain statements, estimates and financial information contained in this

White Paper constitute forward-looking statements or information." Unfortunately

for Defendants, such safe-harbors are not available for issuers selling unregistered

securities. Evidently, Defendants were attempting to reserve protections for

themselves under the federal securities laws whilst simultaneously depriving

Plaintiffs and the Class their rights and protections under the same laws. Such

actions demonstrate the clear inequity of Defendants actions in connection with

the offer and sale of WTT Tokens and Miners throughout the Class Period.

**G.    Necessity for Judicial Intervention**

101.   On July 25, 2017, the SEC issued a report on "the DAO," which

offered tokens for sale online, in which the SEC advised those using "distributed

ledger or blockchain-enabled means for capital raising, to take appropriate steps to

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

ensure compliance" with the federal securities laws, and stated that "[a]ll securities offered and sold in the United States must be registered with the Commission . . ." or qualify for an exemption from registration. On the same day, the SEC issued an investor bulletin urging caution when investing in ICOs and to be mindful that promoters and initial sellers that lead buyers of tokens to expect a return on their investment or participate in shared returns provided by the project may be offering a security for sale.

102.   On September 29, 2017, the Wall Street Journal reported Chairman Clayton as stating "I have yet to see an ICO that doesn't have a sufficient number of hallmarks of a security." This statement sums up the core issue here quite succinctly. Digital currencies are a relatively new phenomenon and various parties are taking advantage of the time it takes for regulatory agencies to address new developments to engage in unlawful conduct with near impunity, as Defendants have here by raising tens of millions of dollars with promises of profits and income-generating opportunities stemming from supposedly efficient mining facilities, many of which have yet to materialize.

103.   Defendants have promoted the Giga Watt ICO, and thus the Giga Watt Project, by making claims that the value of WTT Tokens was likely to significantly increase and repeatedly stressing the multiple ways investors could

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

"make use" of WTT Tokens to generate income and profit. The value of WTT Tokens was at all times expected to result from Defendants' ability to create low-cost, efficient, "Giga Pods" containing Miners that would efficiently and profitably mine cryptocurrency/digital currency (*i.e.*, run the Giga Watt Project). Plaintiff and the Class believed Defendants' timeline for the construction of these Giga Pods and Miners and their expectations of what profit would be made from operating the Miners and what the WTT Tokens would be worth were, in large part, based on the veracity of such representations. However, Defendants have failed to establish the Giga Watt Project.

104.   Further, given the significant nature of such failure it is reasonable to infer that Defendant's knew, or should have known, that their ability to create the Giga Watt Project was farfetched and the timeline used to solicit investments was unrealistic. Indeed, had Defendants' registered their securities they likely would have thought twice, and then a third time, about ensuring they solicited investments using more realistic business plans and timelines. Moreover, had Defendants registered their offering, the SEC would have reviewed their issuing documents for, among other things, logical inconsistencies such as unrealistic timelines for massive construction projects, prior to such documentation being approved for use in soliciting public investments. However, Defendants

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

consciously chose not to register the Giga Watt ICO or the WTT Tokens and their

unlawful conduct in offering and selling unregistered securities in connection with

the Giga Watt ICO has harmed Plaintiff and the Class. Nevertheless, as noted,

Defendants' reasoning or apparent willful deprivation of investors' protections is

immaterial as Plaintiffs' claims provide for strict liability.

105. Investors like Plaintiffs and the Class have already been wrongfully

deprived of the protections of the federal securities laws by Defendants.

Fortunately, the private right of action provided for by Section 12(a)(1) of the

Securities Act was created for just this type of situation, and provides strict

liability for the sale of unregistered securities.

## VI. CLAIMS FOR RELIEF

### COUNT I
**Claim For Violation Of Section 12(A)(1) Of The Securities Act
Against All Defendants**

106. Plaintiffs repeat and re-allege the preceding allegations as if set forth

herein.

107. Section 12(a)(1) grants Plaintiffs a private right of action against any

person who offers or sells a security in violation of Section 5 and states that such

person

> [S]hall be liable . . . to the person purchasing such
> security from him, who may sue either at law or in equity
> in any court of competent jurisdiction, to recover the

CONSOLIDATED CLASS ACTION
COMPLAINT - 43
(No. 2:18-cv-00103-SMJ)

consideration for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

108. From May 19, 2017 through October 2, 2018, in connection with Giga Watt ICO and public sale of Miners, Defendants unlawfully made use of means or instruments of transportation or communication in interstate commerce or of the mails for the purposes of offering, selling, or delivering unregistered securities in direct violation of the Securities Act. Specifically, Giga Watt, Inc., Giga Watt Pte. Ltd., Carlson, Markin, and Khaptakhaev conducted the Giga Watt ICO and offer and sale of Miners through Cryptonomos Pte. Ltd.'s website.

109. The offer and sale of WTT Tokens and Miners constituted the offer and sale of unregistered securities under controlling federal law. WTT Tokens and Miners exhibit the following particular hallmarks of a security under the Howey test: (a) in order to receive any WTT Tokens or Miners, an investment of money, in the form of BTC, ETH, and/or fiat currencies was required; (b) the investment of money was made into the common enterprise that is Defendants' Giga Watt Project and; and (c) the success of the investment opportunities and any potential returns thereon were entirely reliant on Defendants' ability to provide and maintain functional, and cost effective, Miners.

CONSOLIDATED CLASS ACTION
COMPLAINT - 44
(No. 2:18-cv-00103-SMJ)

110. As such, Defendants have participated in the offer and sale of unregistered securities in violation of the Securities Act and are liable to Plaintiffs and the Class for rescission and/or compensatory damages.

### COUNT II
**Claim For Violation Of Section 15(A) Of The Securities Act Against The Individual Defendants**

111. Plaintiffs repeat and re-allege the preceding allegations as if set forth herein.

112. Due to their ownership in and/or control over Defendant Giga Watt, Inc., Defendant Carlson and Defendants Markin and Khaptakhaev's ownership in and/or control over Defendant Giga Watt and/or Cryptonomos, each acted as a controlling person of Giga Watt or Cryptonomos within the meaning of Section 15(a) of the Securities Act as alleged herein.

113. By virtue of Defendant Carlson's position as the founder and CEO of Giga Watt, Inc. and Markin and Khaptakhaev's positions as founders of Giga Watt and/or Cryptonomos, and participation in and/or awareness of Defendant Giga Watt's operations, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision making relating to Giga Watt's solicitation of investments in the Giga Watt Project,

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

including the decision to engage in the sale of unregistered securities in furtherance thereof.

114. By virtue of the foregoing, the Individual Defendants are liable to Plaintiffs and the Class as control persons of Defendants Giga Watt and/or Cryptonomos under Section 15(a) of the Securities Act.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment and relief as follows:

A.      Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B.      Declaring that Defendants offered and sold unregistered securities in violation of the federal securities laws;

C.      Declaring Defendants are liable to Plaintiffs and the Class under Sections 12(a)(1) and/or 15(a) of the Securities Act;

D.      Preliminarily enjoining Defendants from making further transfers or dissipations of the investments raised from the offer and sale of WTT Tokens in connection with the Giga Watt ICO, or using such funds in any further purchases or transactions;

CONSOLIDATED CLASS ACTION
COMPLAINT - 46
(No. 2:18-cv-00103-SMJ)

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

1        E.      Requiring an accounting of the funds and assets raised from Plaintiffs

2   and the Class in connection with the Giga Watt ICO;

3        F.      Imposing a constructive trust over the funds and assets rightfully

4   belonging to Plaintiffs and the Class;

5        G.      Ordering rescission of the investments made by Plaintiffs and the

6   Class relating Giga Watt ICO and/or compensatory damages;

7        H.      Awarding Plaintiffs the costs of this action, including reasonable

8   allowance for Plaintiff's attorneys' and experts' fees; and

9        I.      Granting such other and further relief as this Court may deem just

10  and proper.

**VIII.  JURY DEMAND**

12       Plaintiff respectfully requests a trial by jury on all issues so triable.

13       DATED: October 24, 2018.

14                                        BRESKIN JOHNSON TOWNSEND, PLLC

15                                    By:   *s/Roger Townsend*

16                                      Roger Townsend, WSBA #25525
      1000 Second Avenue, Suite 3670

17                                      Seattle, WA 98104
      Tel: (206)652-8660
      rtownsend@bjtlegal.com

18

19

20

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

OF COUNSEL

Donald J. Enright (to be admitted pro hac vice)
Email: denright@zlk.com
LEVI & KORSINSKY, LLP
1101 30th St., NW, Ste. 115
Washington, DC 20007
Telephone: (202) 524-4292

SILVER MILLER
David C. Silver (to be admitted pro hac vice)
dsilver@silvermillerlaw.com
Jason S. Miller (to be admitted pro hac vice)
jmiller@silvermillerlaw.com
11780 W. Sample Road
Coral Springs, Florida, 33065
Telephone: (954) 516-6000

*Attorneys for Plaintiffs Alex McVicker and
Mark Moss*

CONSOLIDATED CLASS ACTION
COMPLAINT - 48
(No. 2:18-cv-00103-SMJ)

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

CERTIFICATE OF SERVICE

I hereby certify that on this date I filed the foregoing document with the Clerk of the Court using the court's ECF filing system which will automatically serve the filing on registered ECF users.

DATED October 24, 2018, at Seattle, Washington.

*s/Leslie Boston*
Leslie Boston

CONSOLIDATED CLASS ACTION
COMPLAINT - 49
(No. 2:18-cv-00103-SMJ)