Hon. Salvador Mendoza, Jr.

Marc Rosenberg
LEE SMART, P.S., INC.
1800 One Convention Place
701 Pike Street
Seattle, WA 98101-3929
(206) 624-7990
Attorneys for Defendants

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON AT SPOKANE

| | |
|---|---|
| ALEX MCVICKER and MARK MOSS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GIGA WATT, INC.; GIGAGWATT PTE LTD.; CRYPTONOMOS PTE. LTD.; DAVE CARLSON; LEONID MARKIN; and EDWARD KHAPTAKHAEV, a foreign corporation,<br><br>Defendants.<br><br>RAYMOND BALESTRA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GIGA WATT, INC., ET AL.,<br><br>Defendants. | No. 2:18-cv-00103-SMJ<br><br>(Consolidated with No. 2:18-cv-00100)<br><br>DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)<br><br>NOTED FOR HEARING WITHOUT ORAL ARGUMENT: JANUARY 11, 2019 |

DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(B)(6) - 1
2:18-CV-00103-SMJ
6437272.doc

## I. INTRODUCTION

Pursuant to Rule 12(b)(6), defendants Giga Watt, Inc., Dave Carlson, Leonid Markin, and Edwrd Khaptakhaev move to dismiss Plaintiff's Amended Complaint, (Dkt 22), on the ground that the sale of WTT Tokens ("Tokens") and/or Miners was not an "investment contract," and thus not a "security," so Plaintiffs' claims under the Securities Act fail as a matter of law.[1]

This lawsuit arises from the sale of Tokens/Miners to customers. Tokens provided customers with access to a mining facility used to mine cryptocurrency at a time and in the manner of the customers choosing. While a customer could use his or her own mining equipment, the customer could also purchase mining machinery to facilitate their efforts. After being purchased by customers, Tokens/Miners could then be used by customers to mine cryptocurrency in the hopes that their own efforts in mining would lead to a profit.

The sale of the Tokens was not an "investment contract," and thus was not a "security," because Giga Watt and its customers were not involved in a "common enterprise," because the success or failure of the seller did not necessarily correlate with an individual customer's profit or loss. The sale of Tokens/Miners was also not an "investment contract," and thus was not a "security," because Giga Watt's customers expected to make profits off their own mining, and did not expect their profits to be produced by the efforts of others.

---

[1] While defendants GigaWatt, PTE and Cryptonomous PTE, Ltd, are currently unrepresented parties, and are not, strictly speaking, movants in this motion to dismiss, claims against them fail on the same grounds set forth herein, so that claims against them should also be dismissed on this motion.

DEFENDANTS' MOTION TO DISMISS UNDER
RULE 12(B)(6) - 2
2:18-CV-00103-SMJ
6437272.doc

LEE·SMART

P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

## II.  FACTS

### A.  The White Paper should be treated as part of the Amended Complaint for purposes of the Rule 12(b0(6) Motion.

Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the "complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir.1994)). The court may "treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003)).

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Plaintiffs make multiple allegations regarding a "White Paper," quote from it at length, and necessarily rely on it for large portions of their allegations. (ECF No. 22 at ¶¶ 10, 12, 17, 20, 35, 63, 68, 69, 72, 74, 75, 80, 90, 100). As such, this Court may consider the White Paper without converting this motion into one for summary judgment.  A copy of the White Paper is attached to the Declaration Attaching White Paper, Ex. 1 (hereinafter "White Paper").

The White Paper was issued by a foreign company called Cryptonomous, and can be found on the website https://wtt.cryptonomos.com/white-paper.pdf, The White Paper commences with a disclaimer that states:

> Nothing in this White Paper shall be deemed to constitute a prospectus of any sort or a solicitation for investment, nor does it in any way pertain to an offering or a solicitation of an offer to buy securities in any jurisdiction.

White Paper at 3.

Throughout the White Paper, it speaks in terms of "customers" and not "investors."  The White Paper discusses the sale of Tokens, which provide

DEFENDANTS' MOTION TO DISMISS UNDER
RULE 12(B)(6) - 3
2:18-CV-00103-SMJ
6437272.doc

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

customers the right to use a Giga Watt processing center to mine cryptocurrency. White Paper at 4.  *See also* (Dkt 22 at ¶ 75).  While customers could decide what currency to mine, and the selection was intended to expand, it was disclosed that the only cryptocurrency available for mining at the outset would be BTC (Bitcoin), ETH (Ethereum), and LTC (Litecoin)." White Paper at 5.  The White Paper disclosed problems with downtime in regard to mining, and indicated that customers were permitted to tour the mining facility.  *Id*. at 6.  The White Paper disclosed to customers in advance what fees would be charged.  *Id*. at 6-8.

> Once purchased, the value of the WTT Token may significantly fluctuate due to various reasons.  Giga Watt does not guarantee any specific value of the WTT Token over any specific period of time.  Giga Watt shall not be held responsible for any change in the value of WTT Token.
>
> Assumptions with respect to the foregoing involve, among other things, judgments about future economic, competitive and market conditions and business decisions, most of which are beyond the control of the Giga Watt project team and therefore too difficult to accurately predict.  Although the Giga Watt team believes that its assumptions underlying its forward-looking statements are reasonable, any of these may prove to be inaccurate.  As a result, the Giga Watt team can offer no assurances that the foreward-looking statements contained in this White Paper will prove to be accurate.  In light of the significant uncertainties inherent in the forward-looking statements contained herein, the inclusion of such information may not be interpreted as a warranty on the part of Giga Watt or any other entity that the objectives and plans of the Giga Watt project will be successfully achieved.  Please note that the Giga Watt project may be subject to other risks not foreseen by its management at this time.

White Paper at 29.

### B.    Facts alleged by Plaintiffs.

Dave Carlson founded MegaBigPower in 2012, and had constructed three mining facilities by 2016, when he changed the name of the company to Giga

DEFENDANTS' MOTION TO DISMISS UNDER
RULE 12(B)(6) - 4
2:18-CV-00103-SMJ
6437272.doc

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1  Watt. (ECF No. 22 at ¶ 62). Giga Watt, Inc. is a Washington corporation with
2  its principle place of business in Wenatchee, Washington. (*Id*. at ¶ 37). Mr.
3  Carlson was Giga Watt's CEO until August 2018, and is alleged to have given
4  interviews and presentations about cryptocurrency. (*Id*. at ¶ 41). Mr. Markin has
5  an ownership interest in Giga Watt, and is its financial manager. (*Id*. at ¶ 43).
6  Mr. Khaptakhaev has an ownership interest in Giga Watt, and is identified as
7  VP of Sales for Giga Watt. (*Id*. at ¶ 43). Plaintiffs allege that two foreign
8  corporations located in Singapore, sold the mining equipment (Giga Watt, Pte
9  Ltd), and Tokens (Cryptonomos) (the "Foreign Corporations"). (*Id*. at ¶¶ 38-39).

10  In regard to the "Giga Watt Project," customers could either use their own
11  mining equipment or could purchase such equipment from one of the Foreign
12  Corporations with a one-time payment for the purchase. (*Id*. at ¶ 65). Whether
13  they were using their own mining equipment, or had purchased the mining
14  equipment, when they were actually mining, all customers would pay for their
15  electricity costs, a maintenance fee, and a facility rent fee. (*Id*.).

> [Customers] who wanted to use their mining equipment in Giga Watt's mining facilities were encouraged to purchase the number of WTT Tokens equal to their equipment's power consumption. [Customers intended to profit from] WTT Tokens or Miners in the following ways: (1) utilizing Miners to efficiently mine various cryptocurrencies; (2) utilizing the WTT Tokens to mine coins using Giga Watt's Giga Pods; (3) renting out their WTT Tokens to other miners; and (4) or selling WTT Tokens … .[2]

(ECF No. 22 at 29 ¶ 75).[3]

---

[2] The White Paper provides that Tokens may be sold, but there is no mention of "trading" on an "online exchange."

[3] This quote from of the pleadings substitutes the word "customers" in place of Plaintiffs' use of the legal conclusion "investors."

DEFENDANTS' MOTION TO DISMISS UNDER
RULE 12(B)(6) - 5
2:18-CV-00103-SMJ
6437272.doc

LEE · SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

1  Thus, a Giga Watt customer could purchase the means to mine
2  cryptocurrency and could use the equipment to try on their own and mine for
3  profit. Customers could also rent or sell their equipment to others. As such,
4  under Plaintiffs own allegations, the profits that any customer intended to make
5  was dependent upon their own mining skills, or their own skills as a salesperson.
6  Customers did not anticipate making a profit by the efforts of others.

7  Much of Plaintiffs complaints have to do with their allegations that Giga
8  Watt is failing as a business. However, failing as a business enterprise is not a
9  violation of the law. As an analogy, one can assume there is a company that
10  intends to build an amusement park. The company has started constructions on
11  the park and sells some advanced tickets. Then, the company runs into trouble.
12  Perhaps construction is slowed by a natural disaster, like a hurricane. Perhaps it
13  is then unable to get a loan that it was relying on. Construction becomes delayed
14  or the company is unable to proceed. Even if the ticket sales were partially used
15  to fund some of the construction, the buying of the amusement park tickets does
16  not become an "investment contract," and the advance tickets to the amusement
17  park do not magically become "securities" simply because they were sold with
18  the anticipation that the park would one day open its doors.

### III. LEGAL AUTHORITY

**A.    Standard on a Motion to Dismiss.**

A claim may be dismissed pursuant to Rule 12(b)(6) either for lack of a cognizable legal theory or failure to allege sufficient facts to support a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

DEFENDANTS' MOTION TO DISMISS UNDER
RULE 12(B)(6) - 6
2:18-CV-00103-SMJ
6437272.doc

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

*v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

*Renfroe v. Quality Loan Serv. Corp. of Washington*, No. 2:17-CV-0194-SMJ, 2017 WL 4294106, at *2 (E.D. Wash. Sept. 27, 2017).

### A.  Tokens/Miners are not "investment contracts" and therefore not "securities" under the Securities Act.

For purposes of the Securities Act, the term "security" can include an "investment contract." 15 U.S.C. § 77b(1)(a).

Plaintiffs' allege that the sale of Tokens/Miners was an "investment contract," as contemplated by the Securities Act. (ECF No. 22 at 38 ¶ 95).

An investment contract, for the purposes of the Securities Act, is a "contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *S. E. C. v. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). Thus, there is a three-part test to determine whether or not a transaction constitutes an investment contract: (1) an investment of money (2) in a common enterprise (3) with an expectation of profits produced by the efforts of others. *Warfield v. Alaniz*, 569 F.3d 1015, 1020 (9th Cir. 2009).

It is undisputed that customers paid money for the Tokens/Miners, though it is denied that there was an "investment" of money. However, in order to focus on the crucial elements on which Plaintiffs' causes of action fail, only the second and third elements set forth above are at issue in this motion.

DEFENDANTS' MOTION TO DISMISS UNDER
RULE 12(B)(6) - 7
2:18-CV-00103-SMJ
6437272.doc

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

### 1.  Plaintiffs cannot show a "common enterprise."

Vertical commonality exists when "the fortunes of the investors are linked with those of the promoters." *SEC v. Goldfield Deep Mines Co. of Nevada*, 758 F.2d 459, 463 (9th Cir. 1985).  But an "investment contract" does not exist where there is no common enterprise between an investor and a broker (i.e., success or failure of the seller does not correlate with individual customer's profit or loss). *Brodt v. Bache & Co.*, 595 F.2d 459 (9th Cir. 1978).

So, for example, in the purchase of stock, an investor has no control over the price of the stock.  If the company does well, the investor profits for no other reason than that the company does well.  In this relationship the success of failure of the company correlates to the individual investor's profits.

Here, Plaintiffs essentially allege the following in regard to the manner in which customers would be anticipated to make a profit.

> The White Paper described a WTT Token as "an Ethereum token representing the right to use the Giga Watt processing center's capacity, rent-free for 50 years, to accommodate 1 Watt's worth of mining equipment power consumption." Thus, [customers] who wanted to use their mining equipment in Giga Watt's mining facilities were encouraged to purchase the number of WTT Tokens equal to their equipment's power consumption. [Customers intended to profit from] WTT Tokens or Miners in the following ways: (1) utilizing Miners to efficiently mine various cryptocurrencies; (2) utilizing the WTT Tokens to mine coins using Giga Watt's Giga Pods; (3) renting out their WTT Tokens to other miners; and (4) or selling WTT Tokens … .

(ECF No. 22 at 29 ¶ 75).

Thus, Giga Watt made its profit by the sale of a product (i.e., Tokens), but the profit that customer hoped to obtain by the token arose from how a customer used the token.  As such, two customers with identical tokens could have vastly

DEFENDANTS' MOTION TO DISMISS UNDER
RULE 12(B)(6) - 8
2:18-CV-00103-SMJ
6437272.doc

LEE · SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

different results, if one wisely used, rented, or sold the token. For example, the value of currency successfully mined could vary radically depending on the customers own skill or fortunes in mining. Likewise, any individual customer's potential profits were not tied to whether or not Giga Watt itself made a profit.

It was possible for Giga Watt to succeed while the customer failed, or for a customer to succeed independent of Giga Watt's profits. Because the commonality element is lacking, and the second element of the test is not met; there was no "investment contract," and so there was no "security." Plaintiffs' lawsuit thus fails on the second element of the relevant test.

### 2. Profits were made by each customer's effort, without expectation of profits produced solely by other's efforts.

The third element of the test is that the investor "expect profits solely from the efforts of the promoter or a third party." *Peyton v. Morrow Elecs., Inc.*, 587 F.2d 413, 414 (9th Cir. 1978) (citing *Howey*, 328 U.S. 298-99, 66 S.Ct. 1103) (marketing manager of the purported "promoter" failed to show that he expected profits solely by the efforts of others). The Ninth Circuit has "adopted a liberal approach to the interpretation of the word 'solely' as it had been used in *Howey*." *Peyton*, 587 F.2d at 415. "Solely" is not defined literally but is "construed realistically, so as to include within the definition those schemes which involve in substance, if not (in) form, securities." *Id*. The test is "whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *Id*. (citing *Sec. & Exch. Comm'n v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476, 482 (9th Cir. 1973)).

DEFENDANTS' MOTION TO DISMISS UNDER
RULE 12(B)(6) - 9
2:18-CV-00103-SMJ
6437272.doc

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

Here, if a customer purchased Tokens/Miners, but did not use personally use them, then there was no way that customer could make a profit. Conversely, in the purchase of stock, an investor has no control over the price of the stock. If the company does well, the investor profits for no other reason than that the company does well. There is nothing a mere stockholder can do to increase the fortunes of the company invested in, and thus relies solely on the managers of the company to do the work needed for the company to prosper. Plaintiffs allege:

> The White Paper described a WTT Token as "an Ethereum token representing the right to use the Giga Watt processing center's capacity, rent-free for 50 years, to accommodate 1 Watt's worth of mining equipment power consumption." Thus, [customers] who wanted to use their mining equipment in Giga Watt's mining facilities were encouraged to purchase the number of WTT Tokens equal to their equipment's power consumption. [Customers intended to profit from] WTT Tokens or Miners in the following ways: (1) utilizing Miners to efficiently mine various cryptocurrencies; (2) utilizing the WTT Tokens to mine coins using Giga Watt's Giga Pods; (3) renting out their WTT Tokens to other miners; and (4) or selling WTT Tokens … .

(ECF No. 22 at 29 ¶ 75).

In other words, customers purchase tokens, and then use the tokens to mine coins, or rent out or sell their tokens (hopefully for a profit). As discussed above, Giga Watt may have profited by sale of a product (i.e., Tokens), but the profit a customer hoped to obtain by the Token arose from how the customer chose to use the token. As such, two customers with identical tokens could have vastly different results, if one wisely used it and the other did not. In this regard, the anticipated profits were not produced solely by the efforts of others.[4]

---

[4]The Ninth Circuit has also determined that the level of sophistication of an investor has a bearing on whether or not the third element is met. *Stewart v. Ragland*, 934 F.2d 1033, 1038 (9th Cir. 1991). *See also Deutsch Energy Co. v.*

DEFENDANTS' MOTION TO DISMISS UNDER
RULE 12(B)(6) - 10
2:18-CV-00103-SMJ
6437272.doc

By way of another analogy, the Giga Watt customers were involved in the "mining" of cryptocurrency. Buying a Token/Miner was analogous to buying a pickax. The pickax is an instrument used to mine precious objects. A person intending to mine can buy a pickax from a pickax dealer. However, a salesperson having a big pickax sale is not selling securities because, once purchased, it is up to the minor to use the pickax as he or she will to seek for the gold, diamonds, or other precious stones. In the same way, a customer could purchase Tokens which, like the pickax, was a tool for cryptocurrency minors to use to find the treasure. But like the pickax, a Tokens was not a "security," but a tool.

As such, the third element of the test is not met. Therefore there was no "investment contract," and thus no security. Plaintiffs' lawsuit thus fails on the second element of the relevant test.

### B. This Court should dismiss Plaintiffs' causes of action because sale of Tokens/Miners is not the sale of unregistered securities.

Plaintiffs allege two causes of action in their Amended Complaint, under Sections 12(a)(1) and 15(a) of the Securities Act. (ECF No. 22 at 43-46).[5] Both

---

*Mazur*, 813 F.2d 1567, 1570 (9th Cir. 1987) ("Based on undisputed facts, the transaction entered into by DEC and NCEC did not constitute an investment contract because, as possessors of significant managerial powers and a high degree of business acumen, the partners of DEC could not rightfully expect their profits to be derived solely from the efforts of individuals other than themselves"). As such, while it is not a subject of this motion, it would preclude plaintiffs from meeting the "commonality" and/or "typicality" elements of the test for class certification, since it would require a mini-trial to make a determination as to sophistication for each putative plaintiff.

[5] It is interesting how plaintiffs have recently begun using the word "counts," in their pleadings instead of "causes of action," as if to suggest that their civil matters are somehow criminal matters.

DEFENDANTS' MOTION TO DISMISS UNDER
RULE 12(B)(6) - 11
2:18-CV-00103-SMJ
6437272.doc

causes of action are based on the erroneous legal conclusion that the sale of Miner/Tokens constituted an "investment contract." As shown above, there was no investment contract, and therefore no sale of securities. As such Plaintiffs' causes of action should both be dismissed as a matter of law.

### C. Leave to amend should not be granted.

Where it is clear that a complaint 'could not be saved by any amendment, the Court may dismiss without leave to amend. *Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010).

Here, the sale of Tokens/Miners is not a security, and there is no amendment that Plaintiffs' can make to change this fact. As such, Plaintiffs' claims should be dismissed with prejudice.

## IV. CONCLUSION

This Court should dismiss with prejudice Plaintiffs' Amended Complaint as a matter of law as to all Defendants, because the sale of Tokens/Miners did not constitute an "investment contract," and therefore there was no sale of unregistered "securities" under the Securities Act.

Respectfully submitted this 21st day of November, 2018.

By: s/ Marc Rosenberg
Marc Rosenberg, WSBA No. 31034
Of Attorneys for Defendants
Giga Watt, Inc., Dave Carlson, Leonid Markin and Edwrd Khaptakhaev

Lee Smart, P.S., Inc.
701 Pike Street, Suite 1800
Seattle, WA 98101-3929
Phone: 206-622-7990
mr@leesmart.com

DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(B)(6) - 12
2:18-CV-00103-SMJ
6437272.doc

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944

DECLARATION OF SERVICE

I hereby certify that on this date I filed the foregoing document with the Clerk of the Court using the court's ECF filing system, which will automatically serve the filing on registered users.

| | |
|---|---|
| Roger M. Townsend | rtownsend@bjtlegal.com |
| Barry M. Kaplan | bkaplan@wsgr.com, rcarter@wsgr.com |

Dated this 21st day of November, 2018 at Seattle, Washington.

LEE SMART, P.S., INC.

By: s/ Marc Rosenberg
Marc Rosenberg, WSBA No. 31034
Of Attorneys for Defendants
Giga Watt, Inc., Dave Carlson, Leonid Markin and Edwrd Khaptakhaev

Lee Smart, P.S., Inc.
701 Pike Street, Suite 1800
Seattle, WA 98101-3929
Phone: 206-622-7990
mr@leesmart.com

DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(B)(6) - 13
2:18-CV-00103-SMJ
6437272.doc

LEE·SMART
P.S., Inc. · Pacific Northwest Law Offices
1800 One Convention Place · 701 Pike Street · Seattle · WA · 98101-3929
Tel. 206.624.7990 · Toll Free 877.624.7990 · Fax 206.624.5944